Judith **MARTINEZ** and Johnny Doe, by his mother and next friend, Jane Doe, on their own behalf and on behalf of all others similarly situated, Plaintiffs,

v.

Edward W. **MAHER,** Commissioner of the State of Conn. Dept. of Social Services, Defendant.

No. B–78–194 Civ.

United States District Court, D. Connecticut.

Feb. 27, 1980.

Robert F. Echols, Marilyn Kaplan Katz, Bridgeport, Conn., Edward Mattison, Tech. Assistance Program, New Haven, Conn., JoAnne Miner, Conn. Legal Services, Danielson, Conn., for plaintiffs.

Paul M. Shapiro, Hugh Barber, Francis J. MacGregor, Asst. Attys. Gen., Hartford, Conn., for defendant.

1. At the time the restraining orders were entered, these persons were receiving $128.21. The Department increased this amount to

## MEMORANDUM OF DECISION

DALY, District Judge.

### I. INTRODUCTION.

Two recipients of Aid to Families with Dependent Children (AFDC) funds have brought this case on behalf of all Connecticut AFDC recipients who, because they live with a needy relative excluded from the AFDC unit by operation of federal law, make up an AFDC "family of one." Plaintiffs challenge the standards of need that the Department of Income Maintenance (the Department) uses to compute their awards. Plaintiffs allege that the Department's standards violate 42 U.S.C. § 602(a)(24); 45 C.F.R. §§ 233.20(a)(1)(ii), (a)(2)(i), and (a)(3)(ii)(D); and the equal protection and due process clauses of the fourteenth amendment. Pursuant to 42 U.S.C. § 1983, plaintiffs brought this action for declaratory judgment and injunctive relief under 28 U.S.C. §§ 2201 and 2202, claiming jurisdiction under 28 U.S.C. §§ 1331 and 1343(3) and (4). The Court provisionally certified the class as described above on June 23, 1978, and granted a number of temporary restraining orders to members of the plaintiff class, ordering the defendant Commissioner of the Department to increase the movants' monthly AFDC grants to $246.70.[1] The case was tried to the Court on December 3, 1979.

### II. FACTS.

A. *Aid to Families with Dependent Children (AFDC), Title IV of the Social Security Act, 42 U.S.C. §§ 601 et seq.* Connecticut participates in the AFDC program, established by Congress "[f]or the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance . . . to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life . . ." 42 U.S.C. § 601. In order to qualify for AFDC benefits, dependent children must reside with adult caretaker relatives within a certain degree of kinship. 42 U.S.C.

$134.70 in October of 1979. PX 3. ["PX" refers to plaintiffs' exhibits; "DX" refers to defendant's exhibits.]

§ 606(a)(1). Thus under normal circumstances, an AFDC family unit will consist of at least two individuals, the dependent child and the caretaker relative. There are, however, circumstances under which a single individual may qualify for AFDC benefits by comprising an AFDC family of one.

One of these circumstances arises when a needy dependent child lives with a parent who by reason of support from the child's stepparent is not needy, or with some other non-needy relative who has no legal duty to support the child. The second arises when a needy dependent child lives with a disabled caretaker relative who is receiving Supplemental Security Income (SSI)[2] benefits. 42 U.S.C. § 602(a)(24) excludes the SSI recipient from the AFDC unit. The same result obtains where the child is disabled and receives SSI benefits: the adult caretaker relative may still receive AFDC benefits as a family of one. The third instance is a needy dependent child living with a caretaker relative who has failed to comply with the Work Incentive Program (WIN), 42 U.S.C. §§ 630 *et seq.*, or failed to cooperate in establishing paternity pursuant to the Child Support Amendments of 1974, 42 U.S.C. §§ 651 *et seq.* Such a caretaker relative will be removed from the AFDC grant as a sanction for non-compliance, *see* 42 U.S.C. § 602(a)(19)(F) and 42 U.S.C. § 602(a)(26), but the needy dependent child will receive AFDC benefits as a family of one. Finally, a pregnant woman whose child will become eligible for AFDC upon birth is eligible for AFDC benefits as soon as her pregnancy is medically verified. *See* PX 2–5; testimony of Miss Packard.

B. *The Plaintiff Class.* The plaintiff class in this case consists of all Connecticut recipients of AFDC benefits in the second and third situations above, that is, AFDC recipients living with a family member who is needy but is excluded from the AFDC program either by his or her receipt of SSI benefits or as a sanction for failure to comply with AFDC eligibility requirements.

Miss Caroline Packard, the Director of Program Planning for the Department, testified at trial that there is no easy way to determine the numbers or identify the members of the plaintiff class. There are at present approximately 2200 AFDC families of one in Connecticut, of which the majority are children living with non-needy caretaker relatives. Miss Packard testified that the only way to identify the members of the plaintiff class would be to obtain a computer printout of the 2200 families of one and then examine each case file to determine that recipient's living situation. Miss Packard also testified that the class membership is extremely fluid.

C. *Connecticut's Flat Grant System and the AFDC Family of One.* The Department computes the standard of need and awards benefits in the AFDC program according to a "flat grant" system. The amount a family receives under this system is based solely on family size and geographic location.[3] The present monthly flat grant figures for families of one to six persons are as follows:[4]

| | Region A | Region B | Region C |
|---|---|---|---|
| Family of 1 | 134.70 | 115.47 | 113.97 |
| 2 | 358.03 | 309.19 | 309.19 |
| 3 | 443.57 | 379.74 | 373.97 |
| 4 | 517.06 | 445.92 | 433.79 |
| 5 | 583.02 | 509.89 | 493.96 |
| 6 | 651.61 | 576.43 | 560.65 |

The flat grant continues to increase with the addition of a family member. In Region A, for example, the average increase for each additional family member from a family of two upward is approximately $62.00. And as the table above clearly shows, the increments from the family of two amount upward are relatively uniform. The difference between the family of one grant and the family of two grant, however, is approximately twice the average amount of the other increments.

1. *History of the Family of One Grant.* Before 1972, the Department calculated

---

2. *See* 42 U.S.C. § 1381 *et seq.*

3. For purposes of administering the flat grant system, the state is divided into three geographic regions. Apparently Region A essen-

tially is Fairfield County, Region B the rural western parts of the state, and Region C the remainder of the state.

4. *See* PX 3.

AFDC awards on the basis of individual need. In 1972, the Department established the present flat grant system by averaging the awards for the families of each size. The sample group from which the present AFDC family of one grant was derived consisted solely of single recipients who were needy children aged 4 to 12 living with a non-needy parent and a step-parent who was not liable for the child's support. Testimony of Miss Packard; Stipulation filed 12/22/78; Defendant's Answer, ¶ 1.

Miss Packard testified that the Department's grant to children in these circumstances reflected the benefits and reduced needs resulting from the fact that the household was shared with non-needy persons. The Department based its determination of the standard of need in such cases on proration of the expenses of the entire household and on the economies of scale of a larger household.

In all the other sizes of AFDC families, on the other hand, most of the families sampled for purposes of establishing the flat grant rates had to bear the costs of establishing and maintaining a household solely from the AFDC grant. The grants established for these families therefore represented an average of the needs of these "independent" AFDC households, whose grants reflected no proration, and the needs of some shared households.

Thus at the time the flat grants were established, the amounts for all the family sizes were determined with the same degree of rationality. At that time, however, the plaintiff class did not exist, since the SSI program and Child Support Amendments did not come into existence until 1974.

2. *Application of the Family of One Grant to the Plaintiff Class.* In the sanction situation, that is, where the caretaker relative is excluded from the grant for failure to comply with WIN or to cooperate in establishing paternity, the Department reduces the grant to the amount established for the next smaller family size. Thus if the mother of three needy children is sanctioned, the AFDC award falls from $517.06 to $443.57, a reduction of $73.49. Similarly, if a mother with two needy children is sanctioned, the AFDC award falls from $443.57 to $358.03, a reduction of $85.54. However, if the mother or other caretaker relative of one needy child is sanctioned, the AFDC award falls $223.33, from $358.03 to $134.70.[5]

The same analysis applies to the case of an AFDC child with an SSI caretaker relative, although the figures differ slightly because the SSI recipient receives $208.20. In the case of the caretaker relative with three needy children, the family income is $134.71 *more* than the AFDC award for a family of four ($443.57 + $208.20 – $517.06). In the case of the caretaker relative with two needy children, the family income is $122.66 *more* than the AFDC award for a family of three ($358.03 + $208.20 – $443.57). However, if the caretaker relative of one needy child receives SSI benefits, the family income is $15.13 *less* than the AFDC award for a family of two ($134.70 + $208.20 – $358.03). Miss Packard testified that the Department decided that awarding the existing family of one flat grant to an AFDC recipient child in this situation was appropriate because such a child's situation was the same as that of a child living with a non-needy relative and one who was not liable for the child's support, in that in both cases the child benefits from the lower needs of shared households, and the relatives' income is available to help meet household expenses.

There are two situations where the Department does not apply the family of one flat grant to an AFDC family of one. One involves an AFDC caretaker of a child receiving SSI benefits; the other, pregnant women. In 1978, a needy caretaker relative of a child receiving SSI benefits became eligible for an AFDC grant.[6] In this case,

---

5. For the sake of convenience, only the figures for Region A are used in this analysis.

6. There was never any language in either the statute or the regulations denying benefits to such persons. HEW apparently had taken the position prior to 1977 that caretaker relatives of SSI recipient children were not eligible for AFDC benefits, but in 1977 reversed its position. In any event, the parties and HEW now all agree that such persons are eligible, and so

instead of awarding this person the family of one flat grant, the Department allows one half the family of two amount. The family income thus exceeds the AFDC family of two flat grant by $29.19. Miss Packard testified that the Department based this decision on the idea that the family of one grant was intended only to meet the needs of a child, which are lower than those of an adult (the caretaker relative). The Department assumed that the child would meet his half of the household expenses from the SSI payment, and that the AFDC award should therefore consist of the other half.

In the case of pregnant women, who became eligible for AFDC benefits in 1979,[7] the Department uses yet another standard. In establishing the amount of this grant, the Department established an adult "pre-add," representing the average needs excluding shelter of an adult, and added this figure to the shelter component of an AFDC family of two grant. Testimony of Miss Packard; PX 1. The amount of the pregnant woman grant is thus $281.46 for Region A, and $232.62 for Region B or C. PX 3.

3. *The Department's Proposal for the AFDC/SSI Subgroup of the Plaintiff Class.* Just before trial in this case, the Department proposed new standards of need for single AFDC recipients who live with SSI recipients. The resulting grant would consist of the "pre-add" from the present family of one grant (if the AFDC recipient is a child) or the "adult pre-add" from the pregnant woman grant (if the AFDC recipient is the caretaker relative), plus one half the shelter standard from the family of two grant. In Region A, then, the proposed grant would be $160.32 where the AFDC recipient is a child, and $197.71 where the AFDC recipient is the caretaker relative. Thus family income of a family of two where the child receives AFDC benefits and the caretaker relative receives SSI benefits

would be $10.49 more than the AFDC grant for a family of two; where it is the child who receives the SSI benefits, the family income would increase by $47.88. Obviously this is an improvement over the present standard, which results in a *decrease* of $15.13 where the caretaker relative receives SSI benefits, and an increase of only $29.19 where the child receives SSI benefits. But the increase is still notably disproportionate to the increase in the case of a family of three ($122.66) or four ($134.71).

## III. *CONCLUSIONS OF LAW.*

■ A. *Jurisdiction.* The defendant claims that the court lacks jurisdiction to consider plaintiffs' statutory claims under *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979) and *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), because the constitutional claims are without merit. The defendant's conclusion is incorrect. *Chapman* teaches that 28 U.S.C. § 1343 does not confer jurisdiction on a federal court under 42 U.S.C. § 1983 to consider claims alleging violations of the Social Security Act. The rationale of this holding is that neither § 1983 nor the Social Security Act is a statute that secures "equal rights" within the meaning of § 1343(3) or "civil rights" within the meaning of § 1343(4). The fourteenth amendment, however, does confer such rights; § 1983 provides the remedy for deprivation of them; and § 1343 confers jurisdiction on the court to hear controversies arising under the foregoing provisions. The instant case seems much more akin to *Hagans v. Lavine, supra,* than to *Chapman.* In *Hagans,* AFDC recipients sued under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, alleging that a New York regulation allowing the state to recoup rent payments from subsequent AFDC grants violated the equal protection clause of the fourteenth amendment and conflicted with the Social Security Act. The court held that the District Court had

the issue in this case is not eligibility but the amount of the grant to which such persons who fall within the plaintiff class are entitled.

7. *See* 45 C.F.R. § 233.20(c)(2)(ii). This regulation, which is not mandated by the statute, *see*

*Burns v. Alcala,* 420 U.S. 575, 95 S.Ct. 1180, 43 L.Ed.2d 469 (1975), gives the state the option of providing AFDC benefits to pregnant women. Connecticut began exercising this option in 1979.

jurisdiction under § 1343 because the plaintiffs' claim was not

"so insubstantial, implausible, foreclosed by prior decisions of this court or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court, whatever may be the ultimate resolution of the federal issues on the merits."

415 U.S. at 543, 94 S.Ct. at 1382, *quoting Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666–7, 94 S.Ct. 772, 776–77, 39 L.Ed.2d 73 (1974). The court further concluded that "[g]iven a constitutional question over which the District Court had jurisdiction, it also had jurisdiction over the 'statutory' claim," whether or not the latter claim fell within § 1343. *Id.* Defendant claims that plaintiffs' constitutional claims are foreclosed by the decision in *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). "But *Dandridge* evinced no intention to suspend the operation of the Equal Protection Clause in the field of social welfare law. State laws and regulations must still 'be rationally based and free from invidious discrimination.'" *Hagans, supra,* 415 U.S. at 539, 94 S.Ct. at 1380 (citations omitted). It is precisely this lack of rational basis that plaintiffs claim here. Plaintiffs' constitutional claims are substantial, and the Court thus has jurisdiction under 28 U.S.C. § 1343.

■ In addition, the Court has jurisdiction under 28 U.S.C. § 1331. Plaintiffs allege substantial violations of federal constitutional and statutory law, and the amount in controversy exceeds $10,000.[8] Judith Martinez, one of the named plaintiffs in this action, sought and was granted a temporary restraining order raising her benefit level from $133.22 to $224.27, a difference of $91.05 monthly. The present value of this monthly increase, paid for 16

years,[9] exceeds $10,000. Johnny Doe, another named plaintiff, who was two years old when this suit was filed, received an increase under a temporary restraining order of $160.56. The present value of this monthly increase, paid for seven years, exceeds $10,000. Since the plaintiff class is so narrowly defined in this case, it is clear from these examples that each individual member's claim is likely to exceed the jurisdictional amount.

■ *B. Statutory Claims.*[10] *1. AFDC Recipient Child Living with Sanctioned Caretaker Relative.* The Department computed the family of one flat grant from an average of the needs of stepchildren who lived in the homes of non-needy caretaker relatives. The needs of such stepchildren obviously are lower than the needs of single individuals who must establish and maintain a home solely from the AFDC grant, and the Department took this fact into account in computing the amount of the family of one grant. It would of course be possible to have a two-tiered flat grant system providing a larger amount for independent households than for households shared with non-needy family members.

In *Johnson v. White,* 353 F.Supp. 69 (D.Conn.1972), *aff'd in part and rev'd in part,* 528 F.2d 1228 (2d Cir. 1975), the plaintiffs challenged Connecticut's implementation of the flat grant system and sought such a two-tier system. The District Court found that the two groups did have different levels of need, but held that a fair averaging of statistically disparate groups was permissible in establishing a flat grant. This is the method the Department used in computing the AFDC flat grants for all family sizes *except* the family of one. For all sizes except the family of one, the needs of shared and independent households were

---

**8.** Where plaintiff seeks an injunction commanding future payment, and the present value of the benefit to which the right is claimed does not appear to a legal certainty to be less than $10,000, the jurisdictional requirement is met. *Weinberger v. Wiesenfeld,* 420 U.S. 636, 642 n.10, 95 S.Ct. 1225, 1230, n.10, 43 L.Ed.2d 514 (1970); *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938).

**9.** This is not an unreasonable assumption, since Mrs. Martinez' daughter suffers from Down's syndrome, a disability that places limitations on Mrs. Martinez' earning capacity.

**10.** Plaintiffs claim violations of 42 U.S.C. §§ 602(a)(19)(F), (a)(24) and (a)(26); 45 C.F.R. § 233.20(a)(2)(i) and (a)(3)(ii)(D).

averaged together. The family of one flat grant, however, was based solely on an average of the relatively low needs of children in shared households, because at that time such children constituted the only possible class of AFDC families of one.[11]

Thus when the Department awards this grant to an AFDC recipient child who is a family of one because his or her caretaker relative has been excluded from the grant as a sanction, it treats the child as having reduced needs by virtue of sharing in a household established and maintained by non-needy persons. But in fact the AFDC grant is the only source of income available to such a household. In awarding this grant in these circumstances the Department is considering available to the child income that is not actually available, indeed does not exist.

The pertinent regulation, however, states:

> [I]n determining need . . . net income available for current use and currently available resources shall be considered; income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance.

45 C.F.R. § 223.20(a)(3)(ii)(D). The clear import of this regulation is to prohibit the practice at issue. Virtually identical practices in the past have been held violative of similar regulations. For example, in *Van Lare v. Hurley*, 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975), New York's "lodger"

regulation required a pro rata reduction in a family's AFDC shelter allowance where the parent allowed a nonlegally responsible person to reside in the home. The court held that the regulation violated 42 U.S.C. § 606(a) and 45 C.F.R. § 233.90(a) ("[T]he income only of the [legally liable] parent . . . will be considered available for children in the household in the absence of proof of actual contributions. . . ."). In *Lewis v. Martin*, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970), the court struck down California's conclusive presumption that a non-adoptive step-father's income was available to an AFDC recipient child as inconsistent with the predecessor[12] of the regulation involved here.[13]

The case at bar is distinguishable from the cases above only by virtue of an even greater lack of rationality. The California regulation impermissibly considered available income that actually was not available, but at least in fact existed. The New York regulation impermissibly considered income that was not available but at least might in fact exist. The Department's current practice in Connecticut attributes to the AFDC recipient income that most likely does not in fact exist. The application of the present family of one flat grant standard to members of this subgroup of the plaintiff class thus is a clear violation of 45 C.F.R. § 233.20(a)(3)(ii)(D) under *Lewis, supra,* and *Van Lare, supra.*

Miss Packard's testimony at the trial indicated that the Department was aware that the effect of awarding the present family of one flat grant in these circumstances was

---

**11.** It is clear from this discussion that defendant's claim that the instant case is barred by the judgment in *Johnson v. White* is without merit, since the plaintiff class did not exist at the time that judgment was rendered. Indeed, the plaintiffs have indicated that application of the *Johnson* standard to the facts of this case would be appropriate.

**12.** "[I]n establishing financial eligibility and the amount of the assistance payment: . . . (c) only such net income as is actually available for current use on a regular basis will be considered, and only currently available resources will be considered." 45 C.F.R. § 233.-20(a)(3)(ii), *quoted in Lewis v. Martin*, 397 U.S.

552, 555 n.6, 90 S.Ct. 1282, 1284 n.6, 25 L.Ed.2d 561 (1970).

**13.** *See also Buckner v. Maher*, 424 F.Supp. 366 (D.Conn.), *aff'd*, 434 U.S. 898, 98 S.Ct. 290, 54 L.Ed.2d 184 (1977) (Connecticut's "transfer of assets" regulations held violative of Social Security Act due to effective presumption that such transferred and hence unavailable assets available to AFDC recipient); *Solman v. Shapiro*, 300 F.Supp. 409 (D.Conn.), *aff'd per curiam*, 396 U.S. 5, 90 S.Ct. 25, 24 L.Ed.2d 5 (1969) (Connecticut statute conclusively presuming stepparent's income available to AFDC recipient child held invalid).

to punish the child as well as the caretaker relative. Miss Packard testified that the rationale of the Department's policy was that the caretaker relative had "created the situation." In his trial memorandum [14] also defendant acknowledges that the AFDC recipient child suffers from the caretaker relative's "misdeeds," but adds that "children constantly suffer from the misdeeds of their parents." This "sins of the fathers" approach is clearly at odds with the regulation cited above and with the sanction provisions themselves, which are set forth in the margin.[15] These provisions clearly require continuation of the child's benefits in full and the exclusion of the sanctioned relative's benefits. The sanction provisions eliminate the sanctioned relative's needs from the calculus of the family's needs; they do not, however, suggest that the sanctioned relative should be deemed to have income available for the child's use,[16] which is the effect of the Department's current practice.

■ *2. AFDC Recipient Living with SSI Recipient.* 42 U.S.C. § 602(a)(24) provides:

[I]f an individual is receiving [SSI] benefits under subchapter XVI of this chapter, then, for the period for which such benefits are received, such individual shall not be regarded as a member of a family for [the purpose] of determining the amount of the benefits of the family under this subchapter and his income and resources shall not be counted as income and resources of a family under this subchapter.

The implementing HEW regulation, 45 C.F.R. § 233.20(a)(1)(ii), provides:

[I]ndividuals receiving SSI benefits under Title XVI, for the period for which such benefits are received, shall not be included in the AFDC assistance unit for purposes of determining need and the amount of the assistance payment. Under this requirement, "individuals receiving SSI benefits under Title XVI" includes individuals receiving mandatory or optional State supplementary payments.

. . . .

In *Nelson v. Likins*, 389 F.Supp. 1234 (D.Minn.), *aff'd per curiam*, 510 F.2d 414 (8th Cir. 1974), the court held Minnesota's

---

**14.** Defendant's Trial Memorandum, filed Dec. 3, 1980, at 12.

**15.** 42 U.S.C. § 602(a) provides:

A State plan for aid and services to needy families with children must

(19) provide—

(F) that if and for so long as any . . . relative . . . has been found by the Secretary of Labor . . . to have refused without good cause to participate under a work incentive program . . .
(i) . . . such relative's needs shall not be taken into account in making the determination under clause (7), and aid for any dependent child in the family in the form of payments of the type described in section 606(b)(2) . . . or section 608 of this title will be made [*sic*];

(26) provide that, as a condition of eligibility for aid, each applicant or recipient will be required—

(B) to cooperate with the State (i) in establishing the paternity of a child born out of wedlock with respect to whom aid is claimed . . . ; and that, if the relative . . . is found to be ineligible because of failure [so]

to [cooperate] . . . ., and aid for which such child is eligible will be provided in the form of protective payments as described in section [6]06(b)(2) . . . .
Section 606(b)(2) provides a mechanism for issuing protective payments to help assure that the money so received will be used for the child's benefit.

**16.** The legislative history of these sanction provisions resolves any doubt that this was indeed the intent of Congress.

"The ineligibility of a non-cooperating mother would apply only to her and not to her children." S.Rep. No. 1356, 93d Cong. 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Admin. News, pp. 8133, 8152.

A refusal to accept work or undertake training without good cause . . . would be reported back to the State Agency . . ; and, unless such person returns to the program within 60 days . . . ., his welfare payments would be terminated. Protective and vendor payments would be provided to protect dependent children . . . ..
[U]nder the committee proposal the children must be given this protection.
S.Rep. No. 744, 90th Cong., 1st Sess., *reprinted in* [1967] U.S.Code Cong. & Admin.News, pp. 2834, 2860.

application of the lower "shared household" rate to AFDC recipients living with SSI recipients rather than the higher "unshared household" rate (the rate normally applied to households entirely made up of AFDC recipients) a "clear violation of the federal statute." 389 F.Supp. at 1238. Similarly, in *Duval v. Philbrook*, No. 76–34 (D.Vt., June 3, 1976), the court held a state regulation reducing an AFDC recipient child's rental allowance by the difference between the parent's SSI grant and the AFDC standard of need to be "precisely what is forbidden by 42 U.S.C. § 602(a)(24)." *Id.* at 12. And in *Barton v. Lavine*, 38 N.Y.2d 785, 345 N.E.2d 339, 381 N.Y.S.2d 867 (1975), *cert. denied*, 425 U.S. 985, 96 S.Ct. 2191, 48 L.Ed.2d 810 (1976), the New York Court of Appeals held that § 602(a)(24) prohibited New York's practice of "cooperative budgeting" for AFDC and SSI recipients who lived together. The Appellate Division of the New York Supreme Court subsequently held, more specifically, that proration of such a household's actual shelter costs also violated § 602(a)(24). *Barton v. Lavine*, 54 App.Div.2d 350, 389 N.Y.S.2d 416 (3d Dept. 1976).

The cases above all are very persuasive that § 602(a)(24) prohibits the state from taking into consideration in any way the presence of an SSI recipient in an AFDC household when computing the AFDC recipients' award.[17] And the cases clearly indicate that the prohibition applies both to use of a "shared household" standard and to proration of elements of the standard of need.[18]

Both the Department's proposals and its current policies[19] with regard to this subgroup clearly fall within the range of prohibited practices. Whether the Department awards an AFDC family of one in these situations half the family of two grant or a figure based on the addition of a "pre-add" to the proration of the family of two shelter component, it is still basing its computation on a proration of needs between the AFDC recipient and the SSI recipient. Viewed from any angle, this method of computation takes into account the presence of the SSI recipient in the household, as the Department has admitted. This the statute does not permit.[20]

3. *Permissible Alternatives.* The Department must realize that any method of computing the AFDC award for AFDC recipients who live with SSI recipients that takes into consideration the fact that the SSI recipient is a member of the household will violate federal law. (The same analysis applies to AFDC recipient children living with sanctioned caretaker relatives.) To develop a permissible standard, one must pretend that the SSI recipient does not exist at all, and proceed in a rational man-

**17.** *See also Schimmel v. Reed*, 50 A.D.2d 1085, 377 N.Y.S.2d 313 (App.Div. 4th Dept., 1975); *Harrison v. McNutt*, No. 213721 (Wash.Super. Ct., King Cty., Oct. 1977); *Peterson v. Berge*, 84 Misc.2d 517, 377 N.Y.S.2d 887 (Sup.Ct., Albany Co., 1975).

**18.** *Termini v. Califano*, 611 F.2d 367 (2d Cir. 1979), approving termination of plaintiff's SSI benefits, presented a different case from the one at bar. Although the end result there was to reduce the award to plaintiff's AFDC recipient children, this reduction followed from consideration of non-SSI income rather than from an impermissible consideration of SSI benefits.
An increase in Mr. Termini's SSI benefits raised his total income above the standard of need for those "living with others" under the New York regulation. His SSI benefits therefore were terminated, leaving him with only non-SSI sources of income, which the state properly considered under § 602(a)(24); this

consideration led to a reduction in the children's AFDC award. The court noted that this was a harsh result, but also concluded that it was a permissible result under the statute, and that a lower standard for persons "living with others" is rationally based and thus satisfies the *Dandridge* test for compliance with the fourteenth amendment.

**19.** *See* text acc. nn.5–7 *supra, et seq.*

**20.** This prohibition extends, of course, to the proposal to use the present family of one "pre-add" as a portion of the grant for this subgroup, since this pre-add historically is based on the lower needs of step-children in shared households. The impermissibility of this component of the proposal is in addition to the violation of the statute inherent in the proposed proration of the shelter portion of the family of two grant.

ner to compute the needs of one needy AFDC candidate. This procedure may require the Department to do some research and other work that it has not done before; but only through such work will it be able to comply with the statute. In any event, the procedure is clearly not impossible, for it may permissibly be the same procedure that the Department employed for families of two or more when it implemented the flat grant, which the court approved in *Johnson v. White, supra.*[21] As noted above, when the flat grant was implemented, all of the AFDC recipient children comprising a family of one lived with a non-needy parent and a step-parent who was not legally liable for the child's support. Thus there was no statistical basis from which the averaging that was done to arrive at the grants for families of two or more could be done for the family of one. Now, however, since the genesis of the plaintiff class, the necessary statistical basis does exist.

This is not necessarily to suggest that averaging the needs of those in the original "stepchild" situation and the members of the plaintiff class (the latter analysis to be made, of course, without reference to the presence in the household of the sanctioned caretaker relative or the SSI recipient) is the only permissible means of arriving at a new amount for the family of one flat grant. Since the grants for families of two or more already are the result of such a computation, and it is rational to take into account economics of scale, it may make more sense to compute the family of one grant by subtracting from the family of two grant a figure representing either an average of the differences between the grant for a family of size x and the grant for a family of size x + 1, or some other statistically correct and reasonable extrapolation from such figures.

Another alternative would to be retain the present family of one flat grant for application to single AFDC recipients living with non-needy relatives and persons who are living with non-needy relatives who are not liable for the child's support, and to award the recently developed pregnant woman grant[22] to members of the plaintiff class. The latter standard would be appropriate to the plaintiff class because it represents the needs of a single AFDC recipient who must meet her needs solely from the AFDC award, essentially the same criteria as those for membership in the plaintiff class.

C. *Constitutional Claims.* In light of my conclusions as to plaintiffs' statutory claims, it is unnecessary to consider their constitutional claims.

**IV. ORDER.**

Based upon the foregoing findings of fact and conclusions of law, it is hereby ordered that the defendant shall promulgate a new standard of need for the plaintiff class in accordance with said findings and conclusions. Such standard shall not attribute income and resources not actually available to the AFDC recipient or take into account in any way the presence of an SSI recipient in the home.

It is so Ordered.

---

21. *See* text acc. nn.10–11 *supra.*

22. *See* text acc. n.7 *supra.* It is noteworthy that this standard differs from the Department's impermissible proposal for the SSI subgroup of the plaintiff class in that the pregnant woman grant includes the entire shelter component from the family of two grant, whereas the proposed standard contains only half the family of two grant shelter component, wherein lies at least part of the proration that § 602(a)(24) prohibits.