318 S.E.2d 627

**STATE of West Virginia ex rel. Emma STRICKLAND**

v.

**John DANIELS and Patsy Hargis.**

**No. 16212.**

Supreme Court of Appeals of West Virginia.

July 12, 1984.

---

Philip M. Creel, Appalachian Research & Defense Fund, Welch, for appellant.

Harlen Ray Tiller, Oceana, for appellees.

NEELY, Justice:

The petitioner, Emma Strickland, resides in an apartment complex known as Pine Valley Apartments. She seeks a writ of prohibition requiring respondent John Daniels, a magistrate, to remove a wrongful detainer action brought against her by Patsy Hargis, who manages Pine Valley Apartments and is also a respondent here, to the Circuit Court of Wyoming County. Respondents argue that the case should be tried in magistrate court.

This case requires the Court to reconcile two statutory provisions, *W. Va. Code* 50-2-1 [1983] that grants magistrates jurisdiction over actions for unlawful entry and detainer and *W. Va. Code* 50-4-8 [1978] that allows any party to remove an action to circuit court if the case is one "involving $300 or more." We must also articulate the proper test for deciding whether a claim by a defendant against a plaintiff arises from the same transaction and should be treated as a compulsory counterclaim. These are difficult issues and the results we reach today are tied closely to the facts of the case *sub judice*. For the reasons given below we grant the writ.

I

The petitioner and her son have lived in Pine Valley Apartments since May of 1983. She qualifies for housing assistance payments from the U.S. Department of Housing and Urban Development (HUD) and the Farmers Home Administration because of her low income. When petitioner moved into the apartment complex she entered into a rental agreement with Pineville Limited, the lessor of the apartments. The lease was for a period of one year (4 May 1983 to 4 May 1984), after which it would be renewed monthly for an indefinite period. Petitioner's rent was set at $200 per month and was paid entirely by HUD. The agreement provided that the rent could be increased if the petitioner's income changed or if the number of her dependents was reduced, but set an absolute ceiling of $360 which was termed the "market rental" price.

Respondent Patsy Hargis sued the petitioner for possession of the apartment, alleging that petitioner's guests had on one occasion disturbed other tenants. This violated one of the "Guidelines" that was incorporated into the rental agreement. Provision 5.h. stated:

By his signing of this Lease, LESSEE acknowledges receipt of the Rules and Regulations and LESSEE acknowledges that the Rules and Regulations are binding under the terms of this Lease.[1]

The petitioner's answer to this complaint denied the allegations. She also filed a counterclaim for invasion of privacy and intentional infliction of emotional distress seeking damages of $2,000 and fees. Respondent Magistrate John Daniels filed the petitioner's claim but did not designate it as a counterclaim. The eviction case was set for trial on 22 February 1984.

Petitioner then filed a notice of removal seeking to remove both the eviction action and her tort action to the Circuit Court of Wyoming County. The respondent magistrate removed the petitioner's tort action but refused to remove the eviction action. Petitioner seeks to prohibit enforcement of that ruling by this Court. She makes two separate arguments. First, she argues that because possession of the apartment has a value in excess of $300 to her, her defense in the wrongful detainer action meets the amount in controversy requirement set by *W. Va. Code* 50-4-8 [1979]. Second, she argues that her tort claim arises from the same transaction as the eviction action and that it should therefore be treated as a compulsory counterclaim seeking an *ad damnum* in excess of the

---

1. The guideline in question provides in its entirety:
 DISTURBANCES: Resident shall not cause, make or permit excessive noises, odors, or disorderly conduct, allow children, guests, or pets to disturb other residents.

statutory requirement for removal. We will deal with those two arguments separately.

## II

There is a preliminary issue that must be determined in this case. Petitioner seeks the extraordinary remedy of prohibition and asks this Court to overturn an interlocutory ruling. This practice is not generally followed by this Court for reasons of judicial economy. Nevertheless, we believe that petitioner's case does fall within that narrow category of cases in which the writ of prohibition is appropriate.

■ This Court considered the criteria for granting prohibition relief in cases such as the one before us in Syllabus Point 1 of *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979). There we held:

> In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in controvention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

■ The petitioner here is not adequately protected by the right to appeal because she could well be evicted before the appeal is fully heard. For reasons of judicial economy, petitioner seeks to consolidate two actions in a single court. Respondent on

the other hand argues that one of those issues must first be tried before a magistrate while the other must be heard independently in circuit court. Presumably, the party who does not prevail before the magistrate will then proceed to the circuit court. Finally, this court may be asked to determine not only the correctness of the results reached in the individual cases, but also whether those cases should have been consolidated originally. Ruling on these issues now will save both parties and the state time and money, hence we regard prohibition as the appropriate remedy in this case.

## III

Petitioner makes two separate arguments for removing her case to the Circuit Court of Wyoming County. Both arguments claim that this suit "involves" over $300 and, therefore, removal to circuit court is permissible under *W.Va.Code* 50–4–8 [1978].[2]

The first claim is that the value of the rental itself exceeds the $300 limit. Petitioner argues forcefully that the amount in controversy is not necessarily governed by an *ad damnum* request. In support, she relies on such old authority as *McClaugherty v. Rumberg*, 71 W.Va. 98, 76 S.E. 137 (1912) and *Dryden v. Swinbern*, 15 W.Va. 250 [234] (1879). In *McClaugherty*, plaintiffs sued to enjoin recording the release of a vendor's lien. No monetary damages were sought, but the court decided that it had jurisdiction to hear the appeal because loss of the lien threatened the plaintiffs' interest in the underlying amount of the debt. In *Dryden*, this Court held that it had authority to hear an appeal relating to the loss of the office of Clerk of the Circuit Court of Kanawha County because the amount in controversy requirement was met by the value of the office.

2. *W.Va.Code* 50–4–8 [1978] provides in its entirety:

> At any time before trial in a civil action involving less than three hundred dollars the action may be removed to circuit court upon the concurrence of all parties and upon the payment of the circuit court filing fee. At any time before trial in a civil action involving three hundred dollars or more, any party may, upon payment of the circuit court filing fee, cause such action to be removed to the circuit court. All appropriate documents shall then be forwarded along with such fee to the clerk of the circuit court. The matter shall then be heard by the circuit court.

Numerous recent federal cases allow the amount in controversy requirement to be satisfied by showing that a right to future benefits with a present value exceeding the necessary amount, is "involved." *Randall v. Goldmark*, 495 F.2d 356 (1st Cir.1974), *cert. denied*, 419 U.S. 879, 95 S.Ct. 144, 42 L.Ed.2d 119, (involving the present value of a right to future welfare benefits); *Joy v. Daniels*, 479 F.2d 1236 (4th Cir.1973) (involving the right to rent subsidies in publicly financed housing); *Martinez v. Maher*, 485 F.Supp. 1264 (D.Conn.1980) (involving the right to future AFDC monthly payments).

■ We agree with the general proposition that the value of a lawsuit is not determined definitively by the *ad damnum* clause. Certainly, equitable actions seeking injunctive relief frequently have great value to the litigants. Additionally, in an age when many of our citizens' most important property rights involve the expectation of future benefits, whether in the form of public subsidies or private pensions, courts cannot ignore such economic realities in determining the amount in controversy. Therefore, we hold that when determining the amount of money "involved" in a particular lawsuit under *W.Va.Code* 50–4–8 [1979] courts should look to the concrete monetary value of the matters at stake and include in their calculations the present value of future benefits.

■ In the case *sub judice* petitioner asserts persuasively that the continued rental of her apartment has a value to her greatly exceeding $300. Her monthly rent of $200 is now paid entirely by HUD. She is apparently renting the apartment at a discounted rate because of her economic status. Thus, it is unlikely that she would get an equivalent apartment for the same price and quite possible that she would lose some of her federal subsidy should she be required to relocate. There are also obvi-ous expenses in the process of moving itself. For all these reasons we agree with petitioner that her case "involves" more than $300.

Although we rule that the $300 limit set out in *W.Va.Code* 50–4–8 [1978] is exceeded by the facts of this case, the magistrate court still has jurisdiction of all unlawful entry and detainer actions, regardless of the amount in controversy, unless a party removes to circuit court. *W.Va.Code* 50–2–1 [1983] specifically provides that the:

> Magistrate court shall have jurisdiction of matters involving unlawful entry or detainer of real estate so long as the title to such real estate is not in dispute.

This Court has long recognized that "[i]t is an accepted rule of statutory construction that where a particular section of a statute relates specifically to a particular matter, that section prevails over another section referring to such matter only incidentally." *Cropp v. State Workmen's Compensation Commissioner*, 160 W.Va. 621, 626, 236 S.E.2d 480, 484 (1977). *See, Kelley & Moyers v. Bowman*, 68 W.Va. 49, 69 S.E. 456 (1910). However, the fact that magistrates have jurisdiction does not negate the impact of *W.Va.Code* 50–4–8 [1978] that allows either party to remove to the circuit court.

■ The legislature has established a summary eviction proceeding for landlords in *W.Va.Code* 55–3A–1 to –3 [1983] which, unfortunately, is at loggerheads with a tenant's right to have cases involving $300 or more heard in circuit court. This summary relief is intended to give landlords whose tenants are delinquent in paying rent some means of speedy recourse through the court system. However, the legislature made no exception to the general removal statute, *W.Va.Code* 50–4–8 [1978] when it enacted the summary eviction law in 1983.[3] We must hold, therefore, that magistrate courts have initial jurisdiction over unlaw-

---

**3.** *W.Va.Code* 55–3A–1(b) [1983] requires the court to set a date for hearing a petition for summary relief for wrongful occupancy of residential property in not less than five nor more than ten judicial days. Unfortunately, the time limitations of this section are not reflected in the *W.Va.Rules of Civil Procedure* or the *Court Rules for Magistrate Courts*. Until amendment of these rules, it appears logical to apply the substantive provisions concerning counterclaims, but to require that they be asserted within the statutory ten days established by the statute specifically governing petitions for eviction.

ful detainer cases regardless of the amount in controversy, but removal to circuit court is a matter of right if the case "involves" more than $300.

## IV

Petitioner's second claim concerns the removal of her case to circuit court because her suit for invasion of privacy and intentional infliction of emotional distress should be considered a compulsory counterclaim. Removal is merited because the *ad damnum* in the tort claim is $2,000 and the claim does not relate to unlawful detainer.

This argument requires the Court to determine when a lawsuit instituted by a defendant in one suit against a plaintiff in that suit constitutes a compulsory counterclaim. Under Rule 9.1(a) of the Court Rules for Magistrate Courts of West Virginia:

> A defendant may at any time within twenty (20) days after service of process on him commence a separate action as a counterclaim if the defendant alleges that the plaintiff is responsible to him for damages arising from the same transaction or occurrence that is the subject matter of the plaintiff's claim.

There is a dearth of case law interpreting the words "same transaction or occurrence" as they appear in the magistrate rules. Nevertheless, under Rule 2.2(b) of the Court Rules for Magistrate Court,[4] this Court can rely on the interpretation given to the language of Rule 13(a), *W. Va. Rules of Civil Procedure* which is applicable in magistrate court and provides in pertinent part:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

As this Court has not decided definitively what constitutes the same transaction, we look for guidance to federal courts where that term's meaning has been litigated exhaustively if not always comprehensively. Essentially, these courts have followed one of four tests to decide whether cases arise from the same transaction. The first test asks whether the issues of fact and law raised by the claim and counterclaim are basically similar. The second inquires whether *res judicata* bars a subsequent suit by the defendant. The third test questions whether the evidence necessary to support or refute the two claims is essentially the same. And in the fourth test a logical relationship between the claim and the counterclaim is sought. See, Wright and Miller, *Federal Practice and Procedure Section* § 1410.

The first three tests articulated above are far more stringent than the final one. If there is a complete identity of issues between two cases, the interests of judicial economy are clearly served by requiring that the two cases be combined. Similarly if *res judicata* would bar a defendant from bringing his counterclaim as a separate suit after the first case has been tried, simple fairness requires that the counterclaim be treated as compulsory. If two cases involve the same evidence, the expensive process of reinventing the wheel in a second full-blown trial is difficult to justify. The first three tests posit situations in which compulsory counterclaims should clearly be mandated.

It is the established law in this jurisdiction that:

> Under the express terms of *W. Va. Code* 50–4–9 [1978], a defendant in a civil action in magistrate court who fails to assert a counterclaim is not precluded from instituting an action on such claim at a later date, nor will the adjudication of the original claim constitute *res judicata* or act as estoppel as to any such counterclaim.

---

**4.** Rule 2.2(b) provides in its entirety:
Where the rules herein set forth are silent on a procedural matter before the court, the magis-trate shall apply the *Rules of Civil Procedure* for circuit courts as set forth in the West Virginia Code.

Syllabus, *Weller v. Moffett's Pharmacy, Inc.*, 167 W.Va. 199, 279 S.E.2d 196 (1981). Thus, if we were to adopt a test that required *res judicata* in order for two suits to arise from the same transaction we would effectively be reading Rule 9.1(a) of the *Court Rules for Magistrate Court* out of existence.

 For this reason we agree with the United States Court of Appeals for the Second Circuit that claims and counterclaims arise out of the same "transaction or occurrence" if there is a logical relationship between the claim and the counterclaim. *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir.1978). As the United States Supreme Court has stated: " 'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926). By recognizing the flexibility of that term, we give trial courts broad discretion to promote efficiency by trying related matters in a single action. At the same time, however, we recognize that there are situations in which arguably related claims would so muddle the presentation of evidence as to make it impossible for a jury or trial judge to sort out the relevant findings.

In the case before us, the logical relationship between petitioner's tort claim and respondent's action for unlawful detainer is clear. Petitioner argues that an attempt to evict her for entertaining guests at her home is an impermissible invasion of privacy and that the threat of losing her home has caused her severe emotional distress. Although the former claim is contractual while the latter sounds in tort, they both spring from the same "transaction" as neither claim would be before the magistrate court were it not for the party and subsequent eviction notice.

 We therefore find that petitioner's tort claim is a compulsory counterclaim and, as the damages sought exceed the statutory requirement for removal, petitioner has a right to remove the entire action to circuit court. The combined claims are not too complex to be heard in a single trial. In fact, a court attempting to decide the tort claims would necessarily need to consider the propriety of the eviction.

Therefore, for the reasons given above, we grant the writ and order that petitioner's tort suit be treated as a compulsory counterclaim in the unlawful detainer action and that the entire suit be removed to the Circuit Court of Wyoming County.

Writ granted.