592 So.2d 1250 (1992)
Pedro Perez ANDRES a/K/a Pedro A. Perez, Appellant,
v.
John Francis GILBERTI, Jr. and John Francis Gilberti, Sr., Appellees.
No. 91-0021.
District Court of Appeal of Florida, Fourth District.
February 5, 1992.
Stephen R. Koons, Maxine A. Braten and Charles C. Powers of Powers and Koons, P.A., West Palm Beach, for appellant.
Robert B. Sendler of Walton Lantaff Schroeder & Carson, West Palm Beach, for appellees.
ANSTEAD, Judge.
Appellant seeks reversal of an adverse jury verdict on his claim for personal injury. On appeal he asserts that the trial court erred in admitting hospital records containing results of tests concerning his blood alcohol level administered immediately after the accident. We affirm.

FACTS
On January 14, 1989, appellant, Pedro Andres, and appellee, John Gilberti, Jr., *1251 were involved in a motorcycle-bicycle accident. Gilberti was driving a motorcycle on State Road 7 and Andres was trying to cross the road on a bicycle. Andres was treated at John F. Kennedy Hospital where a blood alcohol test was performed as a standard emergency room procedure.
The records custodian at the hospital testified about the routine performance of the blood alcohol test and the recording and use of the test results in the normal course of business at the hospital. The technician who withdrew Andres' blood also authenticated the report and established that the report pertained to Andres. A medical technologist who performed laboratory testing on blood specimens, testified that she personally performed the test on Andres' sample, and established that the testing machine was properly working, had recently been calibrated, and that she had a great deal of experience with conducting such tests. The medical examiner and chief toxicologist for the Palm Beach County Crime Laboratory testified as an expert that the method and means of testing was reliable generally.
In addition to the results of the blood alcohol analysis, the blood sample report in the hospital records contained the legend: "This report is for medical purposes only. The testing parameters do not meet requirements for legal interpretation." The evidence reflects the hospital's practice to put such language on all blood alcohol reports. The purpose for this practice was not disclosed in the testimony and other evidence received at trial. The trial court admitted the hospital records concerning the blood alcohol test including the cautionary language referred to above.

LAW
Section 90.803(6), Florida Statutes (1987), provides for the admission into evidence of:
A ... record in any form, of acts, events conditions, opinion or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity and if it was the regular practice ... all as shown by the testimony of the custodian or other qualified witness, unless the sources of information or other circumstances show lack of trustworthiness... .
In Thunderbird Drive-In Theatre, Inc. v. Reed, 571 So.2d 1341, 1345 (Fla. 4th DCA 1990), rev. denied, 577 So.2d 1328 (1991), we held:
The report of laboratory blood test results performed in a hospital and contained in a patient's hospital record is generally admissible in evidence when the appropriate foundation is laid by a qualified person such as a hospital records custodian, pursuant to Section 90.803(6), Florida Statutes (1987). The statute provides that a record, such as a laboratory report made at or near the time of the event recorded, by a person with knowledge, in the regular course of business and as a regular practice of the hospital's business activity, all of which is shown by the testimony of the custodian or other qualified witness, is admissible in evidence... .
Andres challenges the admission of the test results solely because of the cautionary language on the record. The trial court concluded that the hospital report fit the hearsay exception of reports "in the ordinary course of business", Section 90.803(6), Florida Statutes (1987)  and the cautionary language should go to weight, not admissibility. We agree. Although the cautionary language could be read to show untrustworthiness, we think that is discounted by the positive evidence of its trustworthiness presented at trial. In essence, the evidence of the validity of the test and its results went unchallenged except for the existence of the cautionary language that was left unexplained.
Most cases dealing with the trustworthiness question deal with the motive for preparation of the record. For example, if the document or report seems to have been prepared in anticipation of litigation its reliability *1252 may be suspect. Love v. Garcia, 1991 WL 86819 (Fla. 4th DCA May 29, 1991). The evidence here established, without contradiction, that the test was conducted and the results thereof were used for purposes of medical treatment. This, of course, is strong evidence of legal reliability, since one of the tests of legal reliability is whether the scientific test in question is itself used and relied upon in the scientific discipline involved. While a lot is at stake in civil legal proceedings, the use of the test results in treating the patient's injuries is strong evidence of the test's reliability for all purposes.
Andres also asserts that the plain meaning of the cautionary language should shift the burden of proving reliability to the person seeking admission of the records. Even assuming arguendo that he is correct, however, we find no error by the trial court on this record in concluding that Gilberti had met the burden by establishing the general reliability of the test and by demonstrating the propriety of the procedures followed in this particular case.
LETTS, J., and FRANK, RICHARD H., Associate Judge, concur.