**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Everett Frazier, Commissioner of the West Virginia Division of Motor Vehicles,**
**Plaintiff Below, Petitioner**

**vs)    No. 18-1033** (Kanawha County 18-AA-186)

**Patrick B. Corley,**
**Defendant Below, Respondent**

**FILED**
**March 26, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MEMORANDUM DECISION**

Petitioner Division of Motor Vehicles[1] (DMV),[2] appeals the October 23, 2018, order of the Circuit Court of Kanawha County, which upheld the decision of the Office of Administrative Hearings (OAH) denying an aggravated enhancement for Respondent Patrick B. Corley's[3] conviction for driving under the influence.

Upon consideration of the standard of review, the briefs, the record presented, and oral argument, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

**I. Facts and Procedural History**

On September 6, 2011, Deputies M.S. Armel and Charles Hess of the Jefferson County Sheriff's Department observed a truck that had struck a tree. The driver was not at the scene, but officers noted that both of the truck's airbags had deployed, and the driver's side airbag had blood on it. Deputy Hess located Respondent, who was subsequently identified as the driver of the

---

[1] At the time of the filing of the appeal in this case, Adam Holley was the acting commissioner of the DMV and named as the petitioner. Everett Frazier was appointed to fill the acting commissioner's position on January 2, 2020, and succeeded as commissioner of the DMV on January 6, 2020. Accordingly, the appropriate party has been substituted pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure.

[2] The DMV is represented by Elaine L. Skorich, Esq.

[3] Mr. Corley is represented by B. Craig Manford, Esq.

(Continued . . .)

1

truck, walking alongside the road a short distance from the crash site. Respondent's face was lacerated and bloody.

Respondent also had a strong odor of alcohol on his breath, slurred speech, and glassy, bloodshot eyes. He staggered while walking, and he was unsteady while standing. Respondent informed Deputy Armel that he could not recall the crash, but that he recalled consuming six beers prior to driving. Because of his injuries, Respondent was unable to submit to standardized field sobriety tests and was transported by ambulance to the hospital for treatment. At the hospital, medical personnel performed blood and urine analyses. Deputy Armel later obtained a warrant for Respondent's medical records, which indicated that Respondent's blood serum alcohol level was .22.[4]

On October 25, 2011, the DMV issued an "Order of Revocation" to Respondent for aggravated DUI. Respondent requested a hearing before the OAH, which was held on April 25, 2013. At the hearing, Respondent's medical records were admitted into evidence under West Virginia Code § 29A-5-2(b).[5] Deputy Armel testified to the blood serum alcohol content, and Respondent made two objections. First, Respondent objected to the use of his blood serum alcohol level for purposes of an aggravated DUI enhancement because West Virginia Code of State Rules § 64-10-8.2(d) requires the blood serum alcohol content be converted to the whole blood alcohol content.[6] The DMV countered that the OAH is required to perform the conversion calculation as a matter of law, but the hearing examiner explicitly declined to do so. Second, Respondent objected because the medical records failed to establish that the tests were administered pursuant to West Virginia Code of State Rules § 64-10-8.2(c).[7] According to

---

[4] The difference between the blood serum alcohol level and the whole blood alcohol level is explained succinctly in a case from the Pennsylvania Supreme Court. In *Com. v. Michuck*, 686 A.2d 403, 405-06 (Penn. 1996), the court explained that blood serum is acquired when a blood sample is centrifuged. Diagnostic tests are run on the serum, but because the serum is less dense than the whole blood sample, the alcohol content in the serum can be 10 to 20 percent higher than in the whole blood sample. As such, conversion calculations must be performed to determine the patient's true blood alcohol content for purposes of a DUI determination.

[5] W. Va. Code § 29A-5-2(b) states:

> All evidence, including papers, records, agency staff memoranda and documents in the possession of the agency, of which it desires to avail itself, shall be offered and made a part of the record in the case, and no other factual information or evidence shall be considered in the determination of the case. Documentary evidence may be received in the form of copies or excerpts or by incorporation by reference.

[6] W. Va. C.S.R. § 64-10-8.2(d) states: "The quantity of alcohol found in serum shall be divided by a factor of 1.16 to determine the quantity of alcohol in the blood[.]"

[7] W. Va. C.S.R. § 64-10-8.2(c) states: "The skin shall not be disinfected with ethyl alcohol. (Continued . . .)

2

Respondent, they failed to show that a non-alcoholic disinfectant was used to sterilize his skin prior to the blood draw.

On February 6, 2018, the OAH entered a Final Order upholding the DMV's Order of Revocation for DUI but denying the aggravated DUI enhancement. The OAH stated that the DMV failed to establish (1) that the blood draw had been properly administered and (2) that Respondent had a blood alcohol content in excess of the 0.15% needed for an aggravated DUI enhancement under West Virginia Code § 17C-5A-2(k)(1).[8]

The DMV then sought review of the OAH's Final Order in the Circuit Court of Kanawha County, arguing that the OAH erred in disregarding Respondent's medical records. The DMV also asserted that, while the OAH was required to perform the blood serum to whole blood conversion as a matter of law, it could have taken judicial notice of the conversion formula in West Virginia Code of State Rules § 64-10-8.2(d).

On October 23, 2018, the circuit court denied the petition for review. In doing so, the circuit court determined that it need not rule on whether the OAH's evidentiary findings were clearly wrong because, even if the OAH had considered the results, they showed only Respondent's blood serum alcohol content, not whole blood alcohol content. So, the circuit court concluded that "no evidence was presented to the hearing examiner regarding [Respondent's] blood alcohol content," and, therefore, the court could not conclude that the OAH was clearly wrong in declining to give weight to the blood test results. It is from this order that the DMV appeals.

---

The use of non-alcoholic antiseptics, those which do not contain ethyl alcohol, including 1-1000 aqueous solution of mercuric chloride, aqueous benzalkonium chloride (zephiran), aqueous merthiolate, or other suitable aqueous disinfectants is acceptable[.]"

[8] W. Va. Code § 17C-5A-2(k)(1) states, in pertinent part:

> If in addition to finding by a preponderance of the evidence that the person did drive a motor vehicle while under the influence of alcohol, controlled substance or drugs, the Office of Administrative Hearings also finds by a preponderance of the evidence that the person did drive a motor vehicle while having an alcohol concentration in the person's blood of fifteen hundredths of one percent or more, by weight, the commissioner shall revoke the person's license for a period of forty-five days with an additional two hundred and seventy days of participation in the Motor Vehicle Alcohol Test and Lock Program . . . .

## II. Standard of Review

In syllabus point one of *Muscatell v. Cline*,[9] our holding addressed the standard of review of an administrative order from circuit court:

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

West Virginia Code § 29A-5-4(g) outlines the authority of a circuit court when considering an appeal from an administrative agency such as the OAH:

> The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision or order are:
>
> (1)  In violation of constitutional or statutory provisions; or
> (2)  In excess of the statutory authority or jurisdiction of the agency; or
> (3)  Made upon unlawful procedures; or
> (4)  Affected by other error of law; or
> (5)  Clearly wrong in view of the reliable, probative and substantial evidence; or
> (6)  Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

## III. Discussion

On appeal, the DMV argues that the circuit court clearly erred by concluding that Respondent's blood serum alcohol level test result was a "red herring" and that no evidence was presented to the hearing examiner regarding Respondent's blood alcohol content. Respondent counters that the circuit court properly ruled there was no evidence admitted regarding his blood alcohol content because the DMV failed to convert the blood serum alcohol content to the whole blood alcohol content, and because the DMV failed to admit evidence that showed his blood alcohol diagnostic was performed in compliance with West Virginia Code of State Rules § 64-10-8.2(c).

---

[9] 196 W. Va. 588, 474 S.E.2d 518 (1996).

(Continued . . .)

Rule 202(a) of the West Virginia Rules of Evidence requires that courts "shall take judicial notice without request by a party of the common law, constitutions, and public statutes in force in every state, territory, and jurisdiction of the United States." In *Appalachian Power Co. v. State Tax Dept. of West Virginia*,[10] this Court noted that

> [u]nder West Virginia law, there are three types of rules— legislative, interpretive, and procedural. [. . .] Legislative rules are those "affecting private rights, privileges or interests," in what amounts to a legislative act. W.Va. Code [§] 29A-1-2(i) (1982). Legislative rules have "the force of law[.]" W.Va. Code [§] 29A-1-2(d) (1982).

The rule at issue here, West Virginia Code of State Rules § 64-10-8.2, is part of a series clearly defined as legislative rules with the force of law.[11] The OAH and the circuit court were required to take judicial notice of the laws in effect in this state, and were obligated to apply those laws properly to the facts. In applying the law, the OAH was required to convert Respondent's blood serum alcohol content to a whole blood alcohol content pursuant to § 64-10-8.2(d). As such, the circuit court erred in concluding otherwise. Despite this error, we conclude that the circuit court's decision upholding the denial of an aggravated DUI enhancement was correct on other grounds.[12]

We now turn to Respondent's argument that the OAH was permitted to discount the weight of Respondent's blood diagnostic results because the DMV failed to show that the diagnostic was performed in compliance with West Virginia Code of State Rules § 64-10-8.2(c).

Section 64-10-8.2(c) prohibits the use of ethyl alcohol antiseptics when blood is being drawn for purposes of intoxication chemical tests. The apparent logic behind this prohibition is that the ethyl alcohol disinfectant may artificially increase the level of alcohol in the patient's blood sample. There is no evidence in the record to demonstrate that the hospital staff knew that Respondent was under suspicion of DUI. The officer who escorted him to the hospital never requested that the hospital perform a screen for intoxicants. And, the hospital records indicate, at least with regard to the urine diagnostic, that the test "is to be used only for medical (i.e. treatment) purposes." In an attempt to strengthen its evidence, the DMV submitted an affidavit from an employee of the hospital stating that the test was performed in compliance with the Code of State Rules. But, it is important that this was not the employee who performed Respondent's blood draw. In fact, the record indicates that the employee who performed the original blood draw no longer worked for the hospital and that no contact information was available for her.

---

[10] 195 W. Va. 573, 583, 466 S.E.2d 424, 434 (1995).

[11] W. Va. C.S.R. § 64-10-1.

[12] Syl. Pt. 3, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965) ("This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment.").

West Virginia Code § 17C-5-4(h) plainly states that "[o]nly the person actually administering or conducting a test conducted pursuant to this article is competent to testify as to the results and veracity of the test." Because the person who actually administered the test did not author the affidavit and was unavailable to testify, the OAH was justified in discounting the DMV's submitted affidavit stating that the test was performed correctly. There is no other evidence in the record demonstrating that the test was appropriately performed.

In a final effort, the DMV asserts that it was not required to show that the blood test was properly administered under this Court's holding in *State ex rel. Allen v. Bedell.*[13] Specifically, the DMV argues that

> "[i]t is well settled that blood tests ordered by the medical personnel attending to the driver subsequent to the accident are not subject to exclusion based upon lack of conformity to the administrative requirements of West Virginia Code § 17C-5-4, and the hospital records evidencing the blood results are not subject to exclusion based upon any regulatory scheme for the handling of hospital records."

We disagree. The statute at issue in *Bedell* was the implied consent statute, West Virginia Code § 17C-5-4, which provides that any person who drives in this State shall be deemed to have given consent to a secondary chemical test, and that the secondary test must be incidental to a lawful arrest and administered at the direction of the arresting officer who has reasonable grounds to believe the driver committed the offense.[14] The *Bedell* Court held that the *implied consent*

---

[13] 193 W. Va. 32, 454 S.E.2d 77 (1994).

[14] W. Va. Code § 17C-5-4 states, in pertinent part:

> (a) Any person who drives a motor vehicle in this state is considered to have given his or her consent by operation of the motor vehicle to a preliminary breath analysis and a secondary chemical test of either his or her blood or breath to determine the alcohol concentration in his or her blood, or the concentration in the person's body of a controlled substance, drug, or any combination thereof.
>
> [. . .]
>
> (c) A secondary test of blood or breath is incidental to a lawful arrest and is to be administered at the direction of the arresting law-enforcement officer having probable cause to believe the person has committed an offense prohibited by section two of this article or by an ordinance of a municipality of this state which has the same elements as an offense described in section two of this article.

(Continued . . .)

*statute* does not govern the admissibility of blood test results when a blood test is administered by medical personnel for diagnostic purposes.[15]

Here, Respondent does not contend that the blood test is inadmissible for lack of consent, for the lack of a lawful arrest, or for the lack of reasonable grounds. Rather, he contends that the blood test is inadmissible because the DMV failed to establish that the blood test was properly administered pursuant to West Virginia Code of State Rules § 64-10-8.2(c). Respondent's challenge essentially questions the accuracy of the blood test results in the face of noncompliance with the Code of State Rules. That matter was not before this Court in *Bedell*, and the holding there is limited to challenges under the implied consent statute. Therefore, *Bedell* is not relevant to Respondent's challenge that the blood diagnostic was not properly administered under the applicable legislative rule, and does not control our decision in this case.

In the absence of evidence that the blood diagnostic was performed in compliance with the Code of State Rules, the OAH was justified in discounting the accuracy of the blood diagnostic results for the purpose of an aggravated enhancement. Therefore, we affirm the circuit court's order upholding the denial of an aggravated DUI enhancement.

For the reasons set forth above, we affirm the October 23, 2018, order of the Circuit Court of Kanawha County.

Affirmed.

**ISSUED**: March 26, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

---

[15] *Bedell*, 193 W. Va. at Syl. Pt. 1; 454 S.E.2d at Syl. Pt. 1. ("West Virginia Code § 17C-5-4 (1991) does not govern the admissibility of the results of a diagnostic blood alcohol test conducted prior to the arrest of a defendant and at the direction of a defendant's treating physician or other medical personnel.").