No. 21-0438 and No. 21-0686, *Everett Frazier, Commissioner of the WV DMV v. Burcker and Powers.*

**FILED**

**April 3, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Armstead, Justice, dissenting:**

By affirming the decision of the circuit court in these cases, the majority has mistakenly allowed two drivers to escape the enhancement of their license revocations due to aggravated DUIs even though their blood tests revealed alcohol concentrations of fifteen hundredths of one percent or more, by weight. Respondents were involved in separate car accidents and, after being transported to different hospitals, their blood was drawn for diagnostic purposes. Respondent Burcker had a blood alcohol concentration of .198%, and Respondent Powers had a blood alcohol concentration of .208%. The Office of Administrative Hearings (hereinafter "OAH) upheld the revocations of Respondents' licenses but rescinded the enhancements for aggravated DUI. The Commissioner appealed the OAH's decisions in both cases to the circuit court, and the circuit court affirmed the OAH.

I believe, the majority wrongly rejects the Commissioner's arguments in these cases that "the OAH erred in refusing to give weight to diagnostic blood test results." The OAH refused to afford the tests such weight simply because the DMV did not establish that such tests met the criteria of West Virginia Code of State Rules § 64-10-8. However, there is no dispute that the blood tests at issue were ordered by medical personnel for treatment and diagnostic purposes and were not performed at the direction of law

enforcement officials. Accordingly, I believe that that West Virginia Code of State Rules § 64-10-8 does not apply in these cases.

As the Petitioner notes, in *State ex rel. Allen v. Bedell*, 193 W. Va. 32, 454 S.E.2d 77 (1995), this Court addressed the admissibility and weight of a blood test that was "ordered by medical personnel for diagnostic purposes" at a time that the driver "had not yet been charged with a crime." *Id.* at 34, 454 S.E.2d at 79. Although the driver in *Bedell* argued that his blood test had not been performed in accordance with our implied consent statute, West Virginia Code §17C-5-4, this Court disagreed and concluded that "West Virginia Code § 17C-5-4 (1991) does not govern the admissibility of the results of a diagnostic blood alcohol test conducted prior to the arrest of a defendant and at the direction of a defendant's treating physician or other medical personnel." *Id.* at Syl. Pt. 1. Accordingly, this Court rejected the Petitioner's argument in *Bedell* that "blood tests obtained outside the scope of section 17C-5-4 should be deemed inadmissible." *Id.* at 34, 454 S.E.2d at 79.

Conversely, the Respondents point to our memorandum decision in *Frazier v. Corley*, No. 18-1033, 2020 WL 1493971 (W. Va. Mar. 26, 2020) (memorandum decision), *pet'n for rehearing refused* (June 16, 2020), to support their position that West Virginia Code of State Rules § 64-10-8 applies to these cases and that the OAH was correct when it declined to rely on their blood tests to establish that they had committed aggravated DUI.

This matter illustrates the inconsistency in this Court's prior rulings regarding the admissibility of blood tests administered for diagnostic medical purposes. In light of our decisions in *Bedell* and *Corley*, we are now faced with a situation in which the *implied consent statute* does not bar the use of diagnostic blood tests to establish aggravated DUI under the circumstances present in *Bedell*, but the *legislative rule relating to the implied consent statute* may arguably be used to bar the admission of such tests to establish aggravated DUI.

Simply put, I do not believe that West Virginia Code of State Rules § 64-10-8 applies to the types of diagnostic tests that are at issue in the present case. Further, I am concerned that the application adopted by the majority may have a significant effect on the DMV's ability to admit blood test evidence that was obtained in the course of medical treatment. Therefore, to the extent that *Corley* acts to bar the use of blood tests to establish blood alcohol concentrations in DUI cases, where such tests are administered by medical personnel for treatment and diagnostic purposes and are not requested to be performed by law enforcement officers or personnel, such memorandum decision should be overturned.

As to the actual evidence of blood alcohol concentration in the present cases, the investigating officers in both cases obtained search warrants for the Respondents' medical records, and the Respondents' medical records were admitted into evidence at the OAH administrative hearings. In Respondent Burcker's case, the OAH concluded that the test results could not be used to show his blood alcohol level because the DMV had not produced any evidence that the test was conducted pursuant to West Virginia Code of State

Rules § 64-10-8.  In Respondent Powers' case, the OAH considered the test result to be relevant as to whether he had consumed alcoholic beverages, but it did "not afford the 'result' of the blood analysis any weight in deciding" the matter.  To the extent that the results of the tests were part of DMV's records, they were properly admitted pursuant to West Virginia Code § 29A-5-2(b), which provides

> All evidence, including papers, records, agency staff memoranda and documents in the possession of the agency, of which it desires to avail itself, shall be offered and made a part of the record in the case, and no other factual information or evidence shall be considered in the determination of the case. Documentary evidence may be received in the form of copies or excerpts or by incorporation by reference.

Although the majority finds that this Court's prior decision in *Lowe v. Cicchirillo,* 223 W. Va. 175, 672 S.E.2d 311 (2008) does not support the Commissioner's position, I disagree.  *Lowe* is instructive as to the procedure that should be followed in determining the evidentiary weight to be afforded the blood test results.  *Lowe* reminds us of the following note in *Crouch v. West Virginia Div. of Motor Vehicles*, 219 W. Va. 70, 76, n. 12, 631 S.E.2d 628, 634 n. 12 (2006):

> We point out that the fact that a document is deemed admissible under the statute does not preclude the contents of the document from being challenged during the hearing. Rather, the admission of such a document into evidence merely creates a rebuttable presumption as to its accuracy.

*Id.*  The diagnostic blood test results that were admitted in these cases created a rebuttable presumption of their accuracy, and like other evidence adduced during such proceedings, the Respondents would have the ability to introduce evidence to rebut their accuracy or

relevance. However, unlike the majority, I do not believe that West Virginia Code of State Rules § 64-10-8 bars their use to establish aggravated DUI.

For these reasons, I believe the circuit court erred in affirming the decisions of the OAH in these cases. Accordingly, I respectfully dissent as to the majority's decision to affirm the circuit court's orders.