446 S.E.2d 729

STATE of West Virginia ex rel. Cinda L. SCALES, Petitioner,

v.

The COMMITTEE ON LEGAL ETHICS OF the WEST VIRGINIA STATE BAR, Respondent.

No. 22247.

Supreme Court of Appeals of West Virginia.

Submitted June 7, 1994.

Decided July 15, 1994.

Daniel C. Staggers, Staggers, Staggers & Webb, Martinsburg, Patrick McGinley, Morgantown, for petitioner.

Sherri D. Goodman, Chief Disciplinary Counsel, Ellen F. Golden, Disciplinary Counsel, WV State Bar, Charleston, for respondent.

PER CURIAM:

Cinda L. Scales, a lawyer who represented Marcia Page Riccobene in a divorce proceeding against Michaelangelo Riccobene, seeks to prohibit the Committee of Legal Ethics of the State Bar from proceeding against her on a complaint filed by Mr. Riccobene. In his complaint Mr. Riccobene, who was a member of the U.S. Army, alleges that Ms. Scales contacted his commanding officer twice in violation of a court order prohibiting the dissemination of information about the divorce in order to harass him. Ms. Scales maintains that she did not violate the court order by informing Mr. Riccobene's commanding officer of the two domestic violence proceedings against Mr. Riccobene that occurred before the divorce was filed and that her purpose was not to harass Mr. Riccobene but to seek help to stop Mr. Riccobene from engaging in more domestic violence. Because the evidence shows no violation of a court order and an intention other than harassment, the Court grants the requested writ.

## I.

The Legal Ethics complaint arises from a contentious divorce proceeding in which Ms. Scales represented Ms. Riccobene. Although neither Mr. Riccobene's September 10, 1993 petition for the divorce nor Mrs. Riccobene's answer raises the domestic violence issue [1], before the divorce was filed, between August and September 1992, Mrs. Riccobene had filed two domestic violence petitions in the Magistrate Court of Morgan County, West Virginia. In both cases Mr. Riccobene was ordered to stop abusing Mrs. Riccobene. However, Mrs. Riccobene alleges that Mr. Riccobene continued the abuse.[2]

On March 10, 1993, Mrs. Riccobene contacted Mr. Riccobene's commanding officer about the abuse because according to Mrs. Riccobene, Mr. Riccobene would not do anything to jeopardize his military career. Mr. Riccobene's commanding officer told Mrs. Riccobene he could not do anything unless her lawyer contacted U.S. Army officials.[3] On March 11, 1993, Mr. Riccobene's lawyer informed the family law master of Mrs. Riccobene's contact and the family law master said that the parties were prohibited "from disseminating information with regard to this divorce action." In response to a question from Mr. Riccobene's lawyer, the family law master noted that her order did not extend to the matters originally filed in magistrate court.[4] The family law master's written order dated March 11, 1993 stated: "That the information in this domestic relations case is deemed to be confidential by the Court and the dissemination of information regarding the divorce action is hereby prohibited."

On March 23, 1993, Ms. Scales wrote to Mr. Riccobene's commanding officer that she "believe[d] from the information that I have heard at various Hearings, there may [sic] information that the military would have an interest in investigating." [5] On April 8, 1993, Mr. Riccobene filed a complaint with the Committee on Legal Ethics alleging that Ms. Scales violated a court order by her letter to his commanding officer which had the purpose of harassing and embarrassing him. Mr. Riccobene alleges that in the Spring of 1993 he held a high security clearance and at various times, had been assigned to work at the White House, but as a result of Ms. Scales' letter he lost his White House posi-

---

1. In her response, Mrs. Riccobene asked that the divorce be granted on the grounds of mental cruelty and irreconcilable differences. The orders issued by the family law master either contained the standard language enjoining the parties from harassing, intimidating, harming or otherwise interfering with the liberty of the other or continued the previous orders continuing the anti-harassment language.

2. In a petition for contempt filed in the circuit court after Mr. Riccobene's complaint to the Legal Ethics Committee, Mrs. Riccobene alleged several incidents of abuse including: (1) on October 28, 1993, Mr. Riccobene and a friend shot 176 rounds at her home; (2) Mr. Riccobene threatened Mrs. Riccobene and attempted to coax Mrs. Riccobene's dog to come to him with the intention of harming the dog; and (3) about 11:00 p.m. on October 29, 1993, Mr. Riccobene drove a tractor up and down in front of her house and threatened her.

3. Although the officer's affidavit said that he "did not instruct her [Mrs. Riccobene] to have her attorney write me," Mrs. Riccobene, Ms. Scales and Mr. Riccobene's lawyer said that Mrs. Riccobene was told to have her lawyer contact the military.

4. On March 11, 1993, the following exchange took place between Mr. Riccobene's lawyer and the family law master:
   Mr. Riccobene's lawyer: Does that include the underlying action which was originally filed in magistrate court, which was an FDA?
   Family Law Master Kratovil: I don't know what my jurisdiction would extend to. I don't believe it would, Mr. Speaker. I think I can only address Civil Action 92–C–123 and require the partied [sic] to refrain from disseminating information with regard to this divorce action to anyone else.

5. The following is the entire text of Ms. Scales's March 23, 1993 letter to Mr. Riccobene's commanding officer:
   Please be advised that I represent the interests of Marcia Riccobene in a domestic relations case. Mrs. Riccobene has requested that I contact you concerning various evidence that has been adduced at the Hearings of this matter.
   Although I do not profess to be an expert in the area of military law, I believe from the information that I have heard at various Hearings, there may [sic] information that the military would have an interest in investigating.
   If I can provide you with any additional information, please do not hesitate to contact me. Thank you.

tion and his high security clearance.[6] By letter dated May 4, 1993, Ms. Scales responded to Mr. Riccobene's ethics complaint with an affidavit, a copy of which she sent to Mr. Riccobene's commanding officer.

On January 15, 1994, the Investigative Panel of the Committee on Legal Ethics voted to find probable cause and to bring the matter to a hearing. The ethics complaint alleges that by contacting Mr. Riccobene's commanding officer, Ms. Scales: (1) used a means for no substantial purpose other than to burden a third party in violation of Rule 4.4; (2) knowingly disobeyed one or more pendente lite orders in violation of Rule 3.4(c); and (3) did not counsel her client that a lawyer's conduct is limited to that permitted by the *Rules of Professional Conduct* [1989] in violation of Rule 1.2(e).

A hearing before the Committee on Legal Ethics was scheduled for March 30, 1994 but was continued to May 3, 1994 on Ms. Scales' motion. On April 26, 1994, Ms. Scales petitioned this Court for a writ of prohibition alleging: (1) no valid court order was violated; (2) her contact with Mr. Riccobene's commanding officer was to avert additional domestic violence; and (3) the State Bar failed to conduct an adequate investigation of the matter.[7]

## II.

Rule 3.4(c) of the Rules of Professional Conduct [1989] prohibits a lawyer from knowingly disobeying a valid order. Rule 3.4 states, in pertinent part:

> A lawyer shall not ... (c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.

· · · · ·

■ In this case, the family law master's order prohibiting the dissemination of information was limited to the divorce case and did not include the previous abuse proceedings held before a magistrate under the Prevention of Domestic Violence Act, *W.Va.Code* 48–2A–1 [1991] *et seq.* Ms. Scales' letter to Mr. Riccobene's commanding officer alerted the military to the Prevention of Domestic Violence cases that occurred before the divorce proceedings and concerned Mr. Riccobene's alleged abuse. There was no allegation of abuse in the divorce proceedings. When asked if the prohibition against disseminating information extended to the earlier Prevention of Domestic Violence proceedings, the family law master acknowledged it did not. Based on the record, it is clear that Ms. Scales did not knowingly violate a valid court order because by its terms the family law master's order did not extend to the previous Prevention of Domestic Violence proceedings.[8]

---

**6.** On September 1, 1993, Mr. Riccobene was ordered "not to have any contact with your estranged spouse," to a new permanent station, to undergo drug and alcohol testing, which he successfully passed, and to undergo a psychiatric evaluation.

**7.** Ms. Scales' brief notes that Mrs. Riccobene is presently represented by another lawyer because Mrs. Riccobene terminated her services "because she was not aggressive enough." Ms. Scales' brief alleges that Mr. Riccobene has filed a five million dollar lawsuit against her and Mrs. Riccobene in the U.S. District Court for the District of Columbia.

**8.** In her petition, Ms. Scales argues that the family law master had no authority to enter the non-disclosure order under *State ex rel. Dillon v. Egnor*, 188 W.Va. 221, 423 S.E.2d 624 (1992). In *Dillon*, we noted that "except with regard to temporary procedural orders and *pendente lite* custody and support orders, the family law master has no power to enter an enforceable order affecting the rights and obligations of the parties. Under W.Va.Code, 48A–4–5 (1990), the power is reserved to the circuit court. [Footnote and citation omitted.]" *Dillon*, 188 W.Va. at 225–26, 423 S.E.2d at 628–29.

The Committee maintains the family law master had authority to enter into non-disclosure orders by noting that Rule 39 of *Rules of Practice and Procedure for Family Law* [1994] states "a circuit judge or family law master may, upon motion of a party or sua sponte, order such [sensitive] information sealed in the court file," and that *W.Va.Code* 48–2–13 [1993] allows a family law master to order temporary relief. The Committee maintains that the non-disclosure order argument presents a mixed question of fact and law that should be considered by a trier of fact.

Because by its own terms the family law master's order did not apply to the previous Prevention of Domestic Violence proceedings, we decline to address the arguments concerning the authority of the family law master.

### III.

The Committee also charged that because Ms. Scales' purpose in contacting Mr. Riccobene's commanding officer was to harass and embarrass him, she violated Rule 4.4 of the *Rules of Professional Conduct* [1989]. Rule 4.4 states:

In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.

Ms. Scales maintains that she contacted Mr. Riccobene's commanding officer at her client's request in order to stop Mr. Riccobene from abusing Mrs. Riccobene. Ms. Scales notes that the Department of the Army has a Family Advocacy Program and that her letter to Mr. Riccobene's commanding officer was to confirm Mrs. Riccobene's telephone call asking for assistance. Although Mr. Riccobene's commanding officer acknowledges that in her March 10, 1993 telephone call, Mrs. Riccobene specifically alleged that Mr. Riccobene had physically abused her, the officer alleges that because "Mrs. Riccobene did not ask for protection from then SFC Riccobene," he did not refer the matter to the DOD Family Advocacy Program. However, after Ms. Scales' letters, the officer began an investigation because "there was potential to bring embarrassment to the White House by military personnel." Although the officer's affidavit fails to acknowledge these requests were appeals for help, the September 1, 1993 order issued to Mr. Riccobene said: "I am concerned about your family situation and order: a. You are not to have any contact with your estranged spouse.... If you inadvertently see her, you are to walk away immediately, making no comment or intimidating gesture...."

Appeals for help, especially from the victims of domestic violence are not scripted and should not require the incantation of magic words to be considered. In this case, Mr. Riccobene's abuse toward Mrs. Riccobene is well documented. Mrs. Riccobene's desperate efforts to find help are also clear—two protective orders from magistrate court and a non-harassment order from the family law master. But the abuse continued. Ms. Scales, at Mrs. Riccobene's request, attempted to stop the abuse by advising the military because Mr. Riccobene had said he would never do anything to jeopardize his career in the military.

■ The Committee maintains that their investigation should go forward in order to examine Ms. Scales' intent in contacting the military. However, Rule 4.4 states that "a lawyer shall not use means that have *no substantial purpose other than to embarrass, delay, or burden a third person* [emphasis added]," and the evidence shows Ms. Scales did have a substantial purpose other than harassing and embarrassing Mr. Riccobene. Based on the evidence, we find Ms. Scales did not violate Rule 4.4 of the *Rules of Professional Conduct* [1989] when she alerted the military about the hearings detailing Mr. Riccobene's abuse of Mrs. Riccobene.

### IV.

■ The Committee also alleges that Ms. Scales violated Rule 1.2(e) by failing to advise Mrs. Riccobene that Ms. Scales' representation was limited to that permitted by the *Rules of Professional Conduct*. Rule 1.2(e) of the *Rules of Professional Conduct* [1989] states:

When a lawyer knows that a client expects assistance not permitted by the rules of professional conduct or other law, the lawyer shall consult with the client regarding the relevant limitations on the lawyer's conduct.

In this case, the evidence does not show that Mrs. Riccobene expected assistance not permitted by the *Rules of Professional Conduct*. The record shows that the military services have instituted policies designed to stop domestic violence and a domestic violence victim's attempt to use the services offered by the military with assistance from her lawyer is not a violation of Rule 1.2(e).[9]

9. Ms. Scales also maintained that the Committee did not adequately investigate the charges, because an adequate investigation would have shown the frivolous nature of the charges. The

■ In Syl. pt. 1, *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979), we stated our rule for determining when prohibition is the appropriate remedy. Syl. pt. 1, *Hinkle* states:

> In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

*See State ex rel. Erickson v. Hill,* 191 W.Va. 320, 323, 445 S.E.2d 503, 506 (1994); Syl. pt. 2, *State ex rel. Chesapeake and Potomac Telephone Co. of W.Va. v. Ashworth,* 190 W.Va. 547, 438 S.E.2d 890 (1993).

■ In this case, Ms. Scales argues that allowing the Committee to proceed when the charges are without merit would needlessly duplicate the effort and money for the litigants, lawyers, the State Bar and this Court. Although a writ of prohibition is an extraordinary remedy that is seldom granted in legal ethics matters, we find the circumstances of this case are sufficient to justify the granting of a writ of prohibition. The granting of this writ should not be considered as precedent to stop the Committee in every questionable proceeding.

For the above stated reasons, we grant the requested writ of prohibition.

Writ granted.

---

Committee maintains that although not all potential witnesses were contacted, the testimony of those witnesses would have duplicated matters of record. Given the limited record available at this stage, we find the Committee's investigation to be adequate.