**Michaelangelo P. RICCOBENE, Plaintiff,**

v.

**Cinda L. SCALES, Esquire,
et al., Defendants.**

**Civil Action No. 3:97–CV–15.**

United States District Court,
N.D. West Virginia,
Martinsburg Division.

May 13, 1998.

Diane Elizabeth Cafferty, Washington, DC, for plaintiff.

Marcia Page Riccobene, Junction, WV, pro se.

## MEMORANDUM OPINION AND ORDER

BROADWATER, District Judge.

■ This diversity action is before the court upon motions for summary judgment filed by defendant Cinda L. Scales ("defendant Scales")(Document No. 25), and by defendants, Steven M. Askin, D. Michael Burke & Lawrence M. Schultz (collectively "defendants Askin, Burke & Schultz")(Document No. 24), pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 4.01(a). Although being granted an extension of time to file, the plaintiff, Michaelangelo P. Riccobene ("plaintiff"), did not submit at brief in opposition to either of the respective summary judgment motions.[1]

Upon review of the summary judgment motions submitted by each of the defendants, the court is of the opinion that each should be granted.

### I. FINDINGS OF FACT

On February 3, 1994, the plaintiff filed his Complaint alleging negligent, intentional, and malicious interference with his contract of employment and with his prospective advantage, intentional infliction of emotional distress, and defamation. The plaintiff's Complaint is predicated on two letters authored by defendant Scales, an attorney. The letters were received by the plaintiff's superior officer in the United States Army during the pendency of a domestic violence action and a divorce action between the plaintiff and his exwife, defendant Marcia Riccobene ("Ms. Riccobene").

At the time of the domestic violence and divorce actions, the plaintiff was a member of the United States Army with the rank of Sergeant First Class and was assigned to the White House motor pool. Defendant Scales, an attorney employed by defendants Askin, Burke & Schultz at the time of these proceedings, represented Ms. Riccobene in the domestic violence and divorce actions against the plaintiff.

Ms. Riccobene instituted the domestic violence action against the plaintiff in the Magistrate Court of Morgan County, West Virginia, on August 27, 1992. She alleged that on or about August 11, 1992, the plaintiff slammed metal gates into her and threatened to hit her in the face. She retained defendant Scales on August 28, 1992 to represent her in both the domestic violence action and divorce action.

On September 10, 1992, Ms. Riccobene amended her Petition in the domestic violence action and alleged additional abuse and threats by the plaintiff. Defendant Scales represented Ms. Riccobene at a domestic violence hearing held on September 15, 1992. Ms. Riccobene testified about abuse by the plaintiff. The plaintiff testified in his own defense at this hearing. He stated that he would never do anything to jeopardize his career in the military and denied committing any acts of domestic violence. Magistrate Margaret Gordon, Morgan County, West Virginia, issued a Domestic Violence Final Protective Order finding that Ms. Riccobene had proven her allegations of abuse by the plaintiff by a preponderance of the evidence.

On September 15, 1992, the plaintiff also filed a complaint for divorce against Ms. Riccobene in the Circuit Court of Morgan County, West Virginia, citing irreconcilable differences as grounds for divorce. Ms. Riccobene answered the plaintiff's divorce complaint on October 13, 1992, likewise citing

---

1. The Plaintiff's failure to oppose the defendants' summary judgment motions is not dispositive. A court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law. *Custer v. Pan American Life Insurance Co.,* 12 F.3d 410 (4th Cir.1993). In the instant case, the Court finds that there exist no genuine issues of any material fact and that Defendants Scales, and Askin, Burke & Schultz are entitled to summary judgment as a matter of law.

irreconcilable differences and mental cruelty as grounds for divorce.

On October 16, 1992, Magistrate Gordon entered an Order which renewed her previous Domestic Violence Final Protective Order dated September 15, 1992.

On November 13, 1992, Magistrate Donald J. Sharp, Morgan County, West Virginia, heard sufficient testimony of spousal abuse by the plaintiff upon Ms. Riccobene to issue another Domestic Violence Final Protective Order. This order extended the prior orders in the domestic violence proceeding. Defendant Scales represented Ms. Riccobene at this hearing before Magistrate Sharp. She again presented testimony of the plaintiff's abuse of Ms. Riccobene.

On March 8, 1993, the Family Law Master of Morgan County, West Virginia, entered an order in the divorce proceeding regarding the separation and disposition of certain property. This Order provided that the plaintiff and Ms. Riccobene were prohibited from harassing or interfering with the liberty of each other, but denied the plaintiff's request that Ms. Riccobene and her counsel be prohibited from contacting his superior officer.

In March 1993, Ms. Riccobene informed Defendant Scales that she had contacted the Plaintiff's superior officer, Sergeant Major Lindsey D. Cullison, to enlist his assistance in bringing a halt to the Plaintiff's abuse and harassment of her. Ms. Riccobene further advised defendant Scales that Sergeant Major Cullison would not take action unless defendant Scales confirmed to him in writing that the military may be interested in investigating the matter.

On March 23, 1993, defendant Scales sent a letter at Ms. Riccobene's request to Sergeant Major Cullison. The purpose of the letter was to obtain the military's help in stopping the Plaintiff from abusing and harassing Ms. Riccobene.[2] Defendant Scales' March 23, 1993 correspondence to the plaintiff's superior officer made no factual disclosures.

The plaintiff responded to defendant Scales' contact with his superior officer by filing an ethics complaint against defendant Scales with the West Virginia State Bar. The plaintiff alleged that defendant Scales had violated a court order entered in the divorce proceeding by contacting his superior officer and thereby jeopardized his career in the military.

On May 4, 1993, defendant Scales responded to the plaintiff's ethics complaint against her by sending a letter to the West Virginia State Bar. Prior to defendant Scales' submission of her response, Ms. Riccobene informed defendant Scales that the plaintiff continued to abuse and harass her and that she feared for her physical safety. In response to Ms. Riccobene's concerns, defendant Scales sent a copy of her May 4, 1993 letter to the West Virginia State Bar with attachments, including the plaintiff's ethics complaint against her and her affidavit addressing the allegations in the ethics complaint, to Sergeant Major Cullison. The purpose was to obtain assistance from the military for her client.

On July 15, 1994, the West Virginia Supreme Court of Appeals issued and filed a Writ of Prohibition ordering the West Virginia State Bar's Committee on Legal Ethics to stop investigating defendant Scales pursuant to the plaintiff's ethics complaint. In this decision, the West Virginia Supreme Court of Appeals found that the Family Law Master's order prohibiting the dissemination of information was limited to the divorce case and did not include the domestic violence proceedings held before the Magistrate Court. The Supreme Court further held that defendant Scales' March 23, 1993 correspondence with the plaintiff's superior officer had a substantial purpose other than to harass and embarrass the plaintiff and was in furtherance of defendant Scales' representation of Ms. Riccobene.

---

**2.** Attorney Scales' March 23, 1993 correspondence to Sergeant Major Cullison stated that: [Ms.] Riccobene has requested that I contact you concerning various evidence that has been adduced at the hearing of this matter...I be-

lieve from the information I have heard at various hearings, there may [be] information that the military would have interest in investigating.

After defendant Scales' and Ms. Riccobene's contacts with his superior officer, the plaintiff was reassigned to a unit at Fort Myer, Virginia. The plaintiff believed that he would thereafter be assigned duty overseas and elected to retire.

At that time, the United States Army has a formal policy to both stop and prevent domestic violence, which is embodied at Army Regulation 608–18, Personal Affairs: The Army Family Advocacy Program (18 September 1987). The United States Army had an interest in both stopping and preventing domestic violence committed by its soldiers and had a clear interest in receiving reports of domestic violence allegedly committed by its soldiers.

## II. *DISCUSSION OF LAW*

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, as the United States Supreme Court noted in *Anderson v. Liberty Lobby, Inc.,* Rule 56 itself "provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation of denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that can be resolved in favor of either party." *Id.* 477 U.S. 317, 106 S.Ct. at 2550. *See also Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979) (holding that "summary judgment 'should be granted only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law.' ")(citing *Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4th Cir. 1950)).

In *Celotex,* the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* 477 U.S. at 322, 106 S.Ct. 2548. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. *Oksanen v. Page Memorial Hosp.,* 912 F.2d 73, 78 (4th Cir. 1990), *superceded on rehearing,* 945 F.2d 696 (4th Cir.1991). Additionally, "[o]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

■ The plaintiff advances six theories against defendants Scales and Askin, Burke & Schultz. However, each theory is predicated upon the allegations of defamation set out in paragraphs 14 a-c of the Complaint and arose from defendant Scales' transmission of the March 23, 1993, letter and the May 4, 1994, letter with attachments to Sergeant Major Cullison. Defendant Scales contends that she has a complete defense to the Plaintiff's claims based upon absolute judicial privilege. This Court agrees.[3]

■ The scope of absolute judicial privilege cannot be circumvented by pleading alternative tort theories based on the same alleged wrongful acts or statements. *Hoover v. VanStone,* 540 F.Supp. 1118 (D.Del.1982) (holding that absolute privilege should not be

---

**3.** Since this Court finds that defendant Scales' conduct is absolutely privileged, defendant Scales and defendants Askin, Burke & Schultz have a complete defense to the plaintiff's claims. Nevertheless, the Court notes that the plaintiff never alleged, nor has produced evidence to support the notion, that defendants Askin, Burke & Schultz condoned and/or ratified defendant Scales' alleged misconduct.

frustrated by incorporating alternative theories in the complaint). *See also Rainier's Dairies v. Raritan Valley Farms,* 19 N.J. 552, 564, 117 A.2d 889, 895 (1955) ("If the policy ... is really to mean anything then we must not permit its circumvention by affording an almost equally unrestricted action under a different label."); *Thornton v. Rhoden,* 245 Cal.App.2d 80, 99, 53 Cal.Rptr. 706, 719 (1966)("If it is desirable to create an absolute privilege in defamation ... because we do not want [an attorney or party] to have to be concerned with libel or slander actions ..., we should not remove one concern and saddle him with another for doing precisely the same thing"). The privilege protects the communication. Thus, the theory of liability is irrelevant. Therefore, if the actions of defendant Scales are absolutely privileged, all of the plaintiff's claims against her fail.

■ When there is no conflict as to the circumstances under which the allegedly defamatory communication was made, the question of privilege is entirely one of law for the court. *Higgins v. Williams Pocahontas Coal Co.,* 103 W.Va. 504, 138 S.E. 112, 113 (1927); *see also Stewart v. Riley,* 114 W.Va. 578, 172 S.E. 791, 794 (1934); *Thacker v. Peak,* 800 F.Supp. 372, 386 (1992); *Mosrie v. Trussell,* 467 A.2d 475, 477 (D.C.App.1983). In the instant case, there exists no conflict as to the circumstances under which the allegedly defamatory comments were made by defendant Scales. Therefore, the question of privilege is one of law for this Court to determine.

In determining the question of privilege, this Court turns to the law of the State of West Virginia and, in particular, to the Restatement (Second) of Torts § 586.[4] According to § 586, an attorney's communication is absolutely privileged if it is published by the attorney during the course and as a part of a judicial proceeding in which she participates as counsel, if it has some relation to the proceeding.

In 1992, defendant Scales was retained, in part, by Ms. Riccobene to end the domestic violence by the plaintiff. Ms. Riccobene filed her Domestic Violence Petition on August 27,

1992. On September 15, 1992, she proved the allegations of domestic violence to the satisfaction of the Magistrate Court of Morgan County, West Virginia and obtained an order prohibiting the plaintiff from abusing her. This Order was renewed on October 16, 1992. On November 13, 1992, another hearing was held in the domestic violence action. Ms. Riccobene again proved her allegations of domestic violence by the plaintiff, and another Final Domestic Violence Protective Order was issued.

Notwithstanding the existence of these two Domestic Violence Protective Orders, defendant Scales was advised by Ms. Riccobene in March 1993 that the plaintiff's violence and harassment continued and that she had contacted the plaintiff's superior officer to obtain the military's assistance in ending the domestic violence. Ms. Riccobene further advised defendant Scales that the plaintiff's superior officer requested written confirmation from her lawyer before he could take action on Ms. Riccobene's complaint. Therefore, at Ms. Riccobene's request, defendant Scales sent her March 23, 1993 letter to Sergeant Major Cullison to assist Ms. Riccobene in obtaining the military's help in ending her abuse.

The Court finds that the March 23, 1993 correspondence authored by defendant Scales, written at her client's request, and addressed to the plaintiff's superior officer, was directly related to defendant Scales' efforts to stop the domestic violence. The plaintiff apparently disregarded two separate Orders issued by the Magistrate Court of Morgan County, West Virginia and continued to subject Ms. Riccobene to abuse. However, he had testified at length during the September 15, 1992 domestic violence hearing that he would never do anything to jeopardize his military career. Therefore, defendant Scales' March 23, 1993 correspondence to the Plaintiff's superior officer was published during the course of, and as a part of, the domestic violence proceeding in which she participated as counsel. This had a direct relation to the object of that proceeding,

---

4. In defamation actions of first impression, the West Virginia Supreme Court of Appeals has found the Restatement (Second) of Torts to be persuasive. *Thacker v. Peak,* 800 F.Supp. 372 (S.D.W.Va.1992) (citing *Havalunch, Inc. v. Mazza,* 170 W.Va. 268, 294 S.E.2d 70, 75 (1981)).

which was to stop the plaintiff's abuse and harassment of Ms. Riccobene. Furthermore, the Court notes that this letter to the plaintiff's superior officer made no factual disclosures and referred only to information which was of public record in the of the domestic violence proceeding.

The plaintiff responded to defendant Scales' March 23, 1993 correspondence to his superior officer by filing an ethics complaint against her. As defendant Scales prepared her response to the ethics complaint, she learned from Ms. Riccobene that the plaintiff's abuse still had not stopped and that Ms. Riccobene feared for her physical safety. Therefore, when she responded to the plaintiff's ethics complaint, defendant Scales forwarded a copy of the plaintiff's ethics complaint, her response and her affidavit to the plaintiff's superior officer in a further attempt to obtain the military's assistance in ending the plaintiff's alleged abuse and harassment of Ms. Riccobene.

The Court finds that defendant Scales' May 4, 1993 correspondence to the plaintiff's superior officer arose from defendant Scales' representation of Ms. Riccobene in the domestic violence action and was representative of defendant Scales' continuing efforts to stop the plaintiff's abuse. Like defendant Scales' March 23, 1993 correspondence to the plaintiff's superior officer, defendant Scales' May 4, 1993 correspondence to him arose during the course of, and as part of, a domestic violence action in which defendant Scales participated as counsel and had a direct relation to the object of that action.

■ The Court also finds that defendant Scales' May 4, 1993 response to the plaintiff's ethics complaint, which was forwarded to the plaintiff's superior officer, also arose during the course of, and as a part of, the state bar's quasi-judicial inquiry. This inquiry was initiated by the plaintiff's ethics complaint against defendant Scales. Therefore, this letter had a relation to that proceeding and was absolutely privileged. *See Farber v. Dale*, 182 W.Va. 784, 392 S.E.2d 224, 226 (1990) ("... [T]he West Virginia State Committee of Legal Ethics is a quasi-judicial tribunal."); *see also City of Mullens v. Davidson*, 133 W.Va. 557, 57 S.E.2d 1, 6

(1949) (holding communications made in quasi-judicial proceedings are absolutely privileged).

Based upon the foregoing, the Court finds that defendant Scales has a complete defense to the plaintiff's claims on the basis of absolute privilege. Both of the communications in question were published by her during the course of, and as part of, a judicial domestic violence action in which she was participating as counsel and had some relation to that proceeding. *See* Restatement (Second) of Torts § 586.

The Court also finds that the allegations of domestic violence communicated by defendant Scales to the plaintiff's superior officer in her letters dated March 23, 1993 and May 4, 1993 arose in the domestic violence proceeding and not in the divorce proceeding. The Family Law Master's confidentiality ruling extended only to the divorce action and not to the domestic violence action. Therefore, defendant Scales did not violate any order of confidentiality entered in the divorce action.

The Court's findings are supported by the ruling of the West Virginia Supreme Court of Appeals in *State of West Virginia ex rel. Scales v. Committee on Legal Ethics*, 191 W.Va. 507, 446 S.E.2d 729 (1994). The West Virginia Supreme Court of Appeals ordered the Committee on Legal Ethics to stop investigating defendant Scales in connection with the plaintiff's ethics complaint. The Supreme Court further held that the Family Law Master's Order prohibiting the dissemination of information was limited to the divorce case and did not include the domestic violence action held before the Magistrate Court. The Supreme Court also found that defendant Scales' March 23, 1993 correspondence to the plaintiff's superior officer had a substantial purpose other than to harass and embarrass the plaintiff and was in furtherance of defendant Scales' representation of Ms. Riccobene. *Id.* 446 S.E.2d at 732–30.

■ This Court notes that publication to a person with a direct interest in the judicial proceeding is not an independent element in absolute privilege analysis but rather is only one factor in the analysis. *See Penny v.*

*Sherman,* 101 N.M. 517, 684 P.2d 1182 (N.M.Ct.App.1984); *O'Neil v. Cunningham,* 118 Cal.App.3d, 466, 173 Cal.Rptr. 422 (1981). Nevertheless, the Court finds that in the instant case, that the United States Army had a clear and direct interest in receiving reports of alleged spousal or child abuse committed by its soldiers.

At the time of defendant Scales' contacts with the plaintiff's superior officer, the United States Army had in effect a formal policy designed to both stop and prevent domestic violence. Therefore, the United States Army had a clear and express interest in receiving reports of domestic violence allegedly committed by its soldiers. This was the purpose of defendant Scales' contacts with the plaintiff's superior officer.

 . The plaintiff's allegations that defendant Scales acted intentionally and maliciously do not affect the application of absolute privilege in the instant case.[5] Absolute privilege is based on a public policy of securing to attorneys the utmost freedom in their efforts to secure justice for their clients and protects the attorney from liability in an action for defamation irrespective of her purpose in publishing the defamatory matter, her belief in its truth, or even her knowledge of its falsity. *See* Restatement (Second) of Torts § 586, cmt. a (1977); *see also Mosrie v. Trussell,* 467 A.2d 475 (D.C.1983) (holding that a defendant who resents a plaintiff and enjoys defaming him will not forfeit qualified privilege so long as the primary purpose is to further an interest entitled to protection). Therefore, motive is irrelevant when absolute privilege is involved. No civil remedy may be had for any hardship which may arise from an absolutely privileged communication, even if the absolutely privileged communication is made maliciously. *Crump v. Beckley Newspapers, Inc.,* 173 W.Va. 699, 320 S.E.2d 70, 78 (1983).

The Court, therefore

**ORDERS**

**5.** The Plaintiff admitted during his deposition that he has no basis to believe that Defendant Scales knew that she was providing false information to his superior officer and further admit-

1. That the defendants' motions for summary judgment (Doc. Nos. 24 & 25) are **GRANTED**; and

2. That the Complaint be **DISMISSED** and this matter be stricken from the active docket of the Court.

The Clerk is directed to transmit a true copy of this Order to counsel of record herein and a certified copy to the Plaintiff, Michaelangelo Riccobene, at 7568 Beach Drive, Pasadena, Maryland 21122.

ted that he can only speculate that Defendant Scales knew that information provided by her to his superior officer was misleading.